UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BILL COBB,

                                Plaintiff,

-v-

AMERICAN URBAN RADIO NETWORKS LLC,

                                Defendant.

24 Civ. 1305

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Bill Cobb, an aerial photographer, brings this copyright-infringement action against defendant American Urban Radio Networks LLC ("AURN") under the Copyright Act, 17 U.S.C. § 101 *et seq*. AURN moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies AURN's motion.

## I.   Background[1]

Cobb is a professional photographer who specializes in aerial photography of urban landscapes. AC ¶ 2. On September 20, 2016, Cobb registered for copyright protection a photograph he took of the Evanston, Illinois skyline, titled "chicago_253_81225" (the "Work"). *Id.* ¶ 11–12. He displayed the Work on his personal website for commercial licensing and other custom requests. *Id.* ¶ 13.

AURN is a national radio network alleged to be the "#1 Nielsen rated national audio network company reaching African Americans[,] [w]ith over 40 million weekly listeners on

---

[1] The following account, presumed true for the purposes of resolving the motion, *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), is drawn from the Amended Complaint and exhibits attached thereto, Dkt. 22 ("AC").

6,000 affiliates[.]" *Id.* ¶ 3. AURN owns and operates a website (the "Website") on which, as alleged, it "advertise[s], market[s], and promote[s] its business activities." *Id.* ¶ 4.

On or about August 25, 2021, Cobb discovered AURN's allegedly unauthorized use of the Work on the Website. *Id.* ¶ 20. There, the Work was annexed to an AURN news article about a citywide proposal to address income inequality in Evanston. *See id.*, Ex. 4. Cobb states that the Website's use of the Work included an identifying "watermark" that Cobb had superimposed on the bottom right corner of the photograph. *Id.* ¶ 24.; *see also id.*, Ex. 5. Cobb alleges that "[a]fter AURN copied the Work, it made further copies and distributed the Work on the internet." *Id.* ¶ 22. Cobb alleges that AURN's unauthorized use and distribution of the Work was "in connection with Defendant's business for purposes of advertising and promoting Defendant's business[.]" *Id.* ¶ 26. Cobb alleges that he notified AURN of the allegedly infringing activity on July 13, 2022, and again on January 5, 2023. *Id.* ¶ 28. However, AURN did not respond, and, as of the filing the Complaint, the Work remained on the Website. *Id.*

On February 21, 2024, Cobb filed the Complaint. Dkt. 1. On June 21, 2024, AURN moved to dismiss. Dkt. 18. On July 12, 2024, Cobb filed the Amended Complaint, operative today, which brings a single count of copyright infringement under the Copyright Act, 17 U.S.C. § 501, against AURN. AC ¶ 32. On August 2, 2024, AURN again moved to dismiss under Rule 12(b)(6). Dkt. 23 ("D. Mem."). On August 23, 2024, Cobb opposed. Dkt. 27 ("Pl. Mem."). On September 13, 2024, AURN replied ("Pl. Reply"). Dkt. 28.

## II. Discussion

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where "the plaintiff pleads factual content that allows the

2

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court assumes all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145; *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").

AURN's arguments in support of dismissal are based on the fair use defense to copyright infringement. *See* 17 U.S.C. § 107 ("[F]air use of a copyrighted work . . . is not an infringement of copyright."). AURN does not dispute that it is plausibly pled that it infringed Cobb's copyright in the Work. The Court thus focuses its discussion on the fair use defense, after briefly explaining why the AC states a plausible claim for copyright infringement.

### A.  Infringement

To state a claim for copyright infringement, a complaint must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright. *See Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992).

As to the first prong, the complaint need only state "which specific original works are the subject of the copyright claim." *Warren*, 952 F. Supp. 2d at 616. Here, the AC identifies the specific work at issue. It names the Work, "chicago_253_81225," as the subject of the infringement claim and attaches a copy of the image. AC ¶ 11; *id.*, Ex. 3. That satisfies the first

3

prong. *See, e.g., Warren*, 952 F. Supp. 2d at 616–17 (providing title and depiction of the work "does not create any ambiguity as to the alleged infringement at issue"); *Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18 Civ. 9369, 2020 WL 85469, at *2 (S.D.N.Y. Jan. 6, 2020) (similar); *Schneider v. Pearson Educ., Inc.*, No. 12 Civ. 6392, 2013 WL 1386968, at *2 (S.D.N.Y. Apr. 5, 2013) (similar).

The second and third prongs require the plaintiff "to assert ownership of the relevant copyrights," and to allege "federal copyright registration of the relevant works." *Hartmann v. Amazon, Inc.*, 2021 WL 3683510, at *4 (S.D.N.Y. Aug. 19, 2021). Here, Cobb has annexed to the AC a certificate of registration from the Copyright Office, which names Cobb as the owner of the copyright for the Work. AC, Ex. 2. That registration "constitutes prima facie evidence of the valid ownership of a copyright," *Hartmann*, 2021 WL 3683510, at *4 (citation omitted), and thus satisfies the second and third *Kelly* prongs. *See Davidson v. 925 LLC*, No. 23 Civ. 9891, 2025 WL 35039, at *4 (S.D.N.Y. Jan. 6, 2025) (provision of copyright registration certificate satisfies second and third prong); *Marvullo v. Gruner & Jahr AG & Co.*, No. 98 Civ. 5000, 2001 WL 40772, at *2 (S.D.N.Y. Jan. 17, 2001) (same).

The fourth prong requires that the complaint state "by what acts during what time the defendant infringed the copyright." *Kelly*, 145 F.R.D. at 36. The complaint need not "specify which copyright is infringed by which act," but must "contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement." *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013). Here, the AC identifies the date Cobb discovered the alleged infringement and the date upon which he gave notice to AURN, alleges that AURN "copied Cobb's Work without Cobb's permission," "made further copies" of the Work, "distributed the Work on the internet," and "displayed [the

4

Work] on the AURN Website." AC ¶¶ 20–22, 25. These allegations satisfy the fourth *Kelly* prong. *See, e.g., Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353–54 (S.D.N.Y. 2014) (identifying the date of infringement, and the basis upon which plaintiff believes infringement to have occurred, suffices to satisfy fourth *Kelly* prong); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (similar).

The AC thus pleads a plausible claim of direct copyright infringement.[2]

### B.     Fair Use Affirmative Defense

Section 107 of the Copyright Act provides that "the fair use of a copyrighted work, . . . for purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The defendant bears the burden of proving the affirmative defense of fair use. *See Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018). The Act identifies four nonexclusive factors for courts to consider in determining whether the defense applies:

---

[2] For the first time in its reply brief, AURN suggested that the AC did not state a claim for copyright infringement, nor adequately plead that the infringement was willful. *See* Pl. Reply at 2–3. A finding of willful infringement increases the statutory damages a plaintiff may recover. *See* 17 U.S.C. §504(c)(2).

As a basis for dismissal, these arguments fail for two reasons. *First*, an argument omitted in a party's opening brief, and raised for the first time on reply, is waived. *See, e.g., JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the . . . reply brief."); *Iyoha v. Att'y Gen. of U.S.*, 226 F. App'x. 78, 79 (2d Cir. 2007) (same). *Second*, even if reviewed on the merits, the AC states a plausible claim for copyright infringement for the reasons discussed above. And the facts pled in the AC plausibly support an inference of willfulness. It alleges AURN used the Work despite a visible watermark in the lower right corner of the photo, AC ¶ 24, and AURN continued to display the photo after Cobb notified it that it was displaying a copyrighted Work, *id.* ¶ 28. *See McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 609–10 (S.D.N.Y. 2020) (knowledge on the part of the defendant of the copyrighted nature of the work is sufficient to establish willful infringement); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 411 (S.D.N.Y. 2016) (same).

5

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

The fair use doctrine reflects Congress's recognition that, consistent with the Act's purposes, "'some opportunity for fair use of copyrighted materials' is necessary to promote progress in science and art." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (quoting *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 575 (1994)). The Act "reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 526 (2023) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). The fair use test is thus "flexible" in its application, and "requires judicial balancing, depending upon relevant circumstances." *Id.* at 527 (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 19 (2021)).

Important here, because fair use is "an open-ended and context-sensitive inquiry," *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013), this defense is rarely resolved at the motion to dismiss stage. *See TCA Television Corp.*, 839 F.3d at 178 ("Courts most frequently address a proffered fair use defense at summary judgment."); *Playboy Enters. Int'l Inc. v. Mediatakeout.com LLC*, No. 15 Civ. 7053, 2016 WL 1023321, at *3 (S.D.N.Y. Mar. 8, 2016) ("[T]he fair-use defense is so fact-sensitive that the Second Circuit has instructed district courts

6

to be cautious in granting summary judgment motions on this issue." (cleaned up); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015). However, the fair use defense may form the basis for dismissal where "the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

This is not such a case, as the following review of the statutory factors reflects.

### 1. Purpose and Character of the Use

The first fair use factor, which evaluates the "purpose and character of the use," is "[t]he heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (citation omitted). The "central" question it asks is "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character." *Andy Warhol*, 598 U.S. at 528 (cleaned up) (citing *Campbell*, 510 U.S. at 579). In assessing this factor, courts consider whether the use was (1) transformative, (2) for commercial purposes, or (3) in bad faith. *See Schwartzwald v. Oath Inc.*, No. 19 Civ. 9938, 2020 WL 5441291, at *3 (S.D.N.Y. Sept. 10, 2020); *see also NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477–78 (2d Cir. 2004).

#### a. Transformativeness

A use that "has a further purpose or different character is said to be 'transformative.'" *Andy Warhol*, 598 U.S. at 529 (quoting P. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1111 (1990)). Thus, a copyrighted image may be transformative where "the use serves to illustrate criticism, commentary, or a news story *about* that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) (emphasis in original). However, if a photograph is merely used as an "illustrative aid" that "depicts the subjects described in an article," courts routinely find that this does not constitute transformative use. *Id.*

7

(cleaned up); *see also Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 580–81 (S.D.N.Y. 2020) (collecting cases).

The AC pleads facts plausibly supporting that AURN's use of the work was not transformative. The use of a copyrighted photo in a news article can constitute transformative use where the photo is used to add commentary or criticism to the subject of the article. *See Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 543 (S.D.N.Y. 2019) ("Using a portion of an original work to identify and inform viewers about the subject of a controversy can constitute transformative use."). But the pleadings do not support such here. AURN's use of the Work's depiction of the Evanston skyline is used as an "illustrative aid" to its news article about income inequality in Evanston. *McGucken*, 464 F. Supp. 3d at 606. AURN thus appears to fail to imbue the photograph with any "new meaning." *Id.* Any argument to the contrary "would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph." *Barcroft*, 297 F. Supp. 3d at 352. This subfactor weighs in Cobb's favor.

### b. Commercial nature

With respect to the second subfactor, "the greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (cleaned up). Taking the AC's allegations as true, as the Court must at this stage, AURN's act of infringement generated commercial revenue for it. AC ¶ 26. To be sure, AURN disputes that fact. *See* D. Mem. at 5 ("[T]here was absolutely no commercial exploitation of the Cobb Photo associated with Defendant's publication of the Reparations Article on its website resulting in any financial gain

8

or profit for the Defendant."). But that dispute cannot be resolved absent discovery. This factual dispute, indeed, supplies an excellent illustration why the fair use inquiry is generally ill-suited to resolution on the pleadings. *See, e.g., OMG Accessories LLC v. Mystic Apparel LLC*, No. 19 Civ. 11589, 2021 WL 1167528, at *5 (S.D.N.Y. Mar. 25, 2021) (noting inability to resolve fourth factor "absent a fully developed record"). Given the well-pled allegations in the AC, this factor presently favors Cobb.

        *c.*      *Bad faith*

The propriety of a defendant's conduct "is an integral part of the analysis under the first factor," and "courts [should] consider a defendant's bad faith in applying the first statutory factor." *NXIVM Corp.*, 364 F.3d at 478. At the motion to dismiss stage, the absence of bad faith must be "evident on the face of the complaint." *Winfrey*, 717 F.3d at 308. As alleged, AURN intentionally used Cobb's copyrighted work. AC ¶ 24–25, 34; *id.*, Ex. 5. To be sure, AURN claims it was unaware that it was infringing. *See* D. Mem. at 10. But on the challenge to the pleadings, the Court again must credit the allegations in the AC. *See Koch*, 699 F.3d at 145. This subfactor, too, presently favors Cobb.

### 2. Nature of the Work

In assessing the nature of the work, the Court considers "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (citation omitted).

As to the first subfactor, Cobb alleges that his choices of "perspective, orientation, positioning, lighting, and other details" in capturing the photograph renders the Work an original expression. *See* AC ¶ 15; *see also* Pl. Mem. at 8. AURN argues that the Work is merely a

9

"factual depiction of the aerial skyline of the City of Evanston" and that it lacks creativity or uniqueness. D. Mem. at 6. On the pleadings, there is enough to support Cobb's characterization such that it must be credited. Although the Work appears relatively straightforward, Cobb's claim is plausible that his use of drones and unique orientation, positioning, and lighting "evince[d] at least a modicum of artfulness, sufficient to designate it a 'creative' (rather than 'factual') work for the purposes of fair use analysis." *Clark v. Transp. Alts., Inc.*, No. 18 Civ. 9985, 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015)); *see id.* at *1, *4 (photograph of a "dockless bicycle parked at the edge of a sidewalk" was "creative" despite its "pedestrian" nature); *Sands v. What's Trending, Inc.*, No. 20 Civ. 2735, 2020 WL 8370044, at *4 (S.D.N.Y. Dec. 14, 2020) ("[The] selection of perspective, camera angle, lighting, timing, lens, and filters . . . evinces at least a modicum of artfulness."); *Yang*, 405 F. Supp. 3d. at 546 (same).

With respect to the second subfactor, "the unpublished nature of a work is a key, though not necessarily determinative, factor tending to negate a defense of fair use." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 554 (1985) (cleaned up). The AC's allegation that the Work was published, *see* AC ¶ 13, favors a finding of fair use.

Given these offsetting considerations, the Court finds that the second factor, as a whole, is neutral.

### 3. The Amount and Substantiality Used

The third factor in the fair use inquiry is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole[.]" 17 U.S.C. § 107. In assessing this factor, courts consider "the proportion of the original work used, and not how much of the secondary work comprises the original." *Cariou*, 714 F.3d at 710; *see also Harper & Row*, 471 U.S. at 565. Ultimately, "the question is whether the quantity and value of the materials used are reasonable

in relation to the purpose of the copying." *Blanch*, 467 F.3d at 257 (cleaned up). As courts have repeatedly noted, the inquiry "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell*, 510 U.S. at 587.

Here, AURN reproduced the entirety of the Work, as AURN acknowledges. *See* D. Mem. at 7. But "this factor 'weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 539 (S.D.N.Y. 2018) (quoting *N. J. Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. 2015)). Because it would not have been feasible for AURN to use less than the entire photo for its article, the Court finds this third factor not to favor either party. *See McGucken*, 464 F. Supp. 3d at 608 (finding third factor neutral when entirety of the photograph was reproduced in the secondary work).

### 4. Effect Upon the Potential Market

The fourth and final factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The "concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." *NXIVM Corp.*, 364 F.3d at 482. The Court must also examine "not only the market harm caused by the particular infringement, but also . . . whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Barcroft*, 297 F. Supp. 3d at 355 (citing *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006)).

AURN fairly notes that the AC neither identifies a market for the Work nor an economic loss attributable to AURN's infringing use of the Work. *See* D. Memo at 8. The AC did, however, allege that the Work is available for "commercial licensing or other custom requests,"

11

AC ¶ 13, which suggests at least a potential market for it. In any event, at this stage, the AC's minimal allegations as to this factor do not defeat its claim. *See McGucken*, 464 F. Supp. 3d at 609 (because burden of proving fair use is defendant's, plaintiff need not have pled market harm). And a "presumption" of market harm applies where "a commercial use amounts to mere duplication of the entirety of an original[.]" *Campbell*, 510 U.S. at 591. That presumption applies here insofar as AURN reproduced Cobb's photograph *in toto*. *See McGucken*, 464 F. Supp. 3d at 609 (presumption of market harm applicable when defendant used entirety of original work and for commercial purposes).

It is, further, entirely plausible that AURN's use of the Work would supplant Cobb's profits. Cobb's business model involves the licensing of his photos for commercial use, and AURN used the Work in the same way as would be expected of one of Cobb's customers. *See* AC ¶¶ 13, 20; *id.*, Ex. 4. This factor, on the pleadings, favors Cobb.

* * *

For the reasons above, the Court concludes, based on the pleadings, that the first and fourth factors favor plaintiff and that the second and third are neutral. Given these findings, the Court cannot find fair use is "evident" at this stage. *Winfrey*, 717 F.3d at 308. AURN's motion to dismiss on this ground must be denied, without prejudice to its ability to litigate the point anew on summary judgment.

## CONCLUSION

For the foregoing reasons, the Court denies AURN's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at docket 23. By separate order, the Court will schedule an initial pretrial conference.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 27, 2025
      New York, New York